## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **DAVID RAY**, and **ANTONIO A LAVORGNA**,<br><br>                             Plaintiffs,<br><br>        v.<br><br>**MIKE DOUGLASS PLUMBING, INC.,** a Florida corporation in Florida, and **LANE CURTIS**,<br><br>                             Defendants. | Civil Action No.: 1:23cv22985<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiffs David Ray and Antonio A Lavorgna (collectively, the "**Plaintiffs**"), by and through undersigned counsel, bring this Complaint for copyright infringement against Defendants Mike Douglass Plumbing Inc. and Lane Curtis (collectively, the "**Defendants**"), and alleges as follows:

## INTRODUCTION

**1.**      This cause of action is for willful infringement of Plaintiffs' federally registered copyright pursuant to 17 U.S.C. § 501.

1

**2.**  Plaintiffs are tied to the "Call Mike Douglass" work with registration number PA0002154982 / 2018-11-19 as shown in <u>Exhibit A</u> (the "**Copyrighted Material**").

**3.**  Plaintiffs bring this action for Defendants' willful infringement of the copyright in the composition of the "Call Mike Douglass," and for all damages arising from that infringement, based on 100% of the ownership of that composition, including 100% of the publishers' share and the writers' share of those rights.

**4.**  Defendants were explicitly warned by the Plaintiffs to cease and desist all use of the Copyrighted Materials upon the parties' dissociation, however despite repeated warnings, the Defendants continue to engage in the unauthorized use of the Copyrighted Work.

<u>**PARTIES**</u>

**5.**  Plaintiff, David Ray ("**Mr. Ray**"), is an individual with a residence in Florida, and is otherwise sui juris.

**6.**  Plaintiff, Antonio A Lavorgna ("**Mr. Lavorgna**"), is an individual with a residence in Florida, and is otherwise sui juris.

**7.**  Upon reasonable information and belief, Defendant Mike Douglass Plumbing, Inc. ("**MDP Inc.**") is organized as a Florida corporation, with its principal place of in Florida, where it does substantial business in this district. MDP Inc. is otherwise sui juris.

**8.**     Upon reasonable information and belief, Defendant Lane Curtis ("**Ms. Curtis**") is an individual with a residence in Florida, and the principal for MDP, Inc. Ms. Curtis is otherwise sui juris.

**9.**     Plaintiffs are informed and believe, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

**10.**     Plaintiffs are informed and believes, and on that basis alleges, that each of the Defendants acted in concert and participation with each other concerning the claims in this Complaint.

**11.**     Plaintiffs are informed and believe, and on that basis alleges, that Ms. Curtis was empowered to act as the agent of MDP, Inc. and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of them.

**12.**     Upon reasonable information and belief, Mr. Ray was employed by the Defendants, whereby Mr.Ray's industrial efforts and work ethics led to the substantial commercial success of MDP Inc.

**13.**     Upon reasonable information and belief, on or about May 23, 2023, Mr. Ray dissociated from the Defendants due to changes in management at MDP Inc.

## JURISDICTION AND VENUE

**14.**     This is an action arising under the Copyright Act, 17 U.S.C. § 501.

**15.**     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves federal questions arising under the Copyright Act, as amended, 17 U.S.C. §§ 101 et seq. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

**16.**     Defendants are subject to the personal jurisdiction of this Court because not only is MDP Inc. incorporated in this jurisdiction, and Ms. Curtis an individual residing in this jurisdiction, but because the enumerated Defendants have directed their activities and marketing of the infringing works to Florida residents, and Florida residents are able to acquire the services of MDP Inc.

**17.**     Defendants have engaged in systematic and continuous business activities relating to the Infringing Works. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

**18.**     The instant Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with Florida residents.

19.     The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in Florida.

20.     Florida has a considerable interest in adjudicating disputes wherein Florida residents are the target of the harm resulting from exploitation of the infringing work.

21.     Venue in this district is proper under 28 U.S.C. §§ 1400(a) and 1391(c) in that a substantial part of the events giving rise to the within claims occurred in this judicial district, and under 28 U.S.C. § 1400(b) because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District..

## FACTS COMMON TO ALL CLAIMS

22.     At all times relevant hereto, Plaintiff has been and still is the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments thereto) (the "Copyright Act") to reproduce, distribute, display, or license the reproduction, distribution, and/or display of their audiovisual multimedia work, listed on Exhibit A attached hereto, which is the subject of this action (referred to herein as the "**Work**") throughout the United States.

23.     The Work is an original copyrightable work under the Registration Number / Date PA0002154982 / 2018-11-19. Plaintiffs have complied in all respects with 17 U.S.C. § 101 et seq.

and have secured exclusive rights in the Work and has received its copyright registration in the Work with the Copyright Office in accordance with its rules and regulations.

24.     Plaintiffs are entrepreneurs who have used the experience, talent, and creativity developed over years of hard work to develop the Work, with the understanding that Defendant's had a limited and revocable license to use such work in Plaintiffs' sole discretion.

25.     The harmonic, melodic, and rhythmic elements of the Work substantially contributed to the financial success of MDP Inc.

26.     On or about May 23rd, 2023, Plaintiffs explicitly withdrew any authorization previously granted to Defendants to reproduce, distribute, prepare derivative works, or publicly display the Work or any portion thereof.

27.     An email confirming the termination of Defendants' authorization was sent to Defendants on May 23rd, 2023, attached hereto as Exhibit C. As of that date, Defendants no longer had any rights or permission to reproduce, distribute, prepare derivative works, or publicly display the Work or any portion thereof.

28.     Since May 23rd, 2023, Defendants, without permission, have publicly displayed and performed the Copyrighted Material on multiple occasions through various mediums, including Xfinity and its company's Facebook page, totaling, at a minimum, 479 separate copyright

infringement instances on Xfinity alone, and an estimated 288 times on Spectrum channels (the "**Copyright Violations**").

29.     Due to such Copyright Violations, Plaintiffs sent Defendants a follow up cease and desist letter on July 7th, 2023, instructing them to cease using the Copyrighted Work. A copy of the cease-and-desist letter is attached hereto as Exhibit B.

30.     Upon information and belief, Defendants have infringed and willfully continue to infringe the copyright in the Work by unlawfully reproducing and distributing identical copies of the Work, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

31.     The natural and probable foreseeable result of Defendants' wrongful conduct has been to deprive Plaintiff of the benefits of using the Work, and to injure Plaintiffs' relationship with present and prospective customers.

32.     Defendants' production and sale of the infringing products and Defendants' wrongful conduct has also deprived and continues to deprive Plaintiffs of the opportunity of expanding its good will.

33.     Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiffs' copyright, and in conscious disregard for Plaintiffs' exclusive rights in the protected Work.

**34.**     Defendants' deliberate infringement of Plaintiffs' copyright has greatly and irreparably damaged Plaintiffs, and Defendants will continue to damage Plaintiffs greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, Plaintiffs will have no adequate remedy at law. Accordingly, Plaintiffs are entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT ONE

## COPYRIGHT INFRINGEMENT – 17 U.S.C. § 101 ET SEQ.

**35.**     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 26 as if fully set forth herein.

**36.**     Plaintiffs own valid copyrights in the Work at issue in this case.

**37.**     Plaintiffs registered the Work with the Register of Copyrights pursuant to <u>17 US.C. § 411(a).</u> A true and correct copy of the Certificate of Registration from the U.S. Copyright Office is attached as <u>Exhibit A</u> hereto.

**38.**     Plaintiffs are currently, and at all relevant times, the joint owners of all rights, title, and interest in and to the copyrights of the Copyrighted Work.

39.     The Work is a wholly original work that is copyrightable subject matter under the laws of the United States.

40.     Defendants are willfully infringing Plaintiff's copyright in the Work by reproducing, displaying, distributing, and creating derivative works of the Work without permission in violation of the Copyright Act, 17 U.S.C. § 106.

41.     The infringements are willful, executed with full knowledge of Plaintiffs' copyright, and in conscious disregard of Plaintiffs' exclusive rights in its protected Work.

42.     By reason of the infringement, Plaintiffs have sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted Work.

43.     Because Plaintiffs are without an adequate remedy at law, Plaintiffs are entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Defendant, its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendant from engaging in further acts of copyright infringement.

44.     Plaintiffs are further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of copyright infringement.

45.     At its election, Plaintiffs are entitled to recover statutory damages in accordance with 17 U.S.C. § 504.

**46.**     Plaintiffs are also entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 505.

### COUNT TWO

### VICARIOUS INFRINGEMENT – 17 U.S.C. § 101 ET SEQ.

**47.**     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 26 as if fully set forth herein.

**48.**     Plaintiffs allege that Ms. Curtis, the principal for MDP Inc., and is thus vicariously liable for the copyright infringement committed by Mike Douglass Plumbing Inc. as alleged in Count One.

**49.**     Ms. Curtis had the right and ability to supervise and control the infringing activities of MDP Inc., and she had a direct financial interest in the infringing use of the Copyrighted Work.

**50.**     Despite having knowledge of the infringing activities of MDP Inc., Ms. Curtis failed to take reasonable steps to prevent or stop the infringement.

51.     Ms. Curtis financially benefits from the infringing activities of MDP Inc. and continues to allow the unauthorized use of the Copyrighted Work despite having the authority and ability to prevent it.

52.     Ms. Curtis's actions and omissions demonstrate her willful blindness and intentional disregard for Plaintiffs' exclusive rights in the Copyrighted Work.

53.     Ms. Curtis's vicarious infringement has caused and continues to cause significant harm to the Plaintiffs, and they are without an adequate remedy at law to address the ongoing infringement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in its favor and against Defendant as follows:

A.     For judgment that Defendants have violated the Copyright Act and that all such violations have been willful;

B.     For a preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with Defendants from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any

materials that are substantially similar to the copyrighted Work, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control;

**C.**     For a preliminary and permanent injunction enjoining and restraining Defendants and its agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiffs' copyrights.

**D.**     Statutory damages, at Plaintiffs' election, under the Copyright Act, as well as costs and attorney's fees to the full extent provided for by Sections 501, 504 and 505 of the Copyright Act, 17 U.S.C. §§ 501, 504 and 505;

**E.**     For an award of reasonable attorney's fees and costs under 17 U.S.C. § 505; and

**F.**     For such other and further relief as the Court deems just and proper.

Plaintiffs further demand relief from this Court in the form of compensatory damages, consequential damages, special damages, and other legal or equitable remedies that may be appropriate in accordance with the requirements of the law.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully demand trial by jury on all claims so triable.

**Dated**: August 9, 2023

Respectfully submitted,

_____

Anibal Suriel, Esq.
Florida Bar No. 1028940
Solidity Law
2222 Ponce De Leon Blvd., STE 300
Coral Gables, FL 33134
(786)842-7140
anibal@soliditylaw.com
Attorney for Plaintiff

## EXHIBIT A

6/16/23, 6:47 PM

United States Copyright Office

**Try the Copyright Public Records System (CPRS) pilot with enhanced search features and filters.**

Help New Search Search History Titles List Start Over

# Public Catalog

 Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = call mike douglass
Search Results: Displaying 1 of 1 entries

Detailed Record

### *Call Mike Douglass.*

|  |  |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0002154982 / 2018-11-19 |
| **Application Title:** | Call Mike Douglass. |
| **Title:** | Call Mike Douglass. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Antonio A Lavorgna, 1968- . Address: 105 Tucker Ave, Sarasota, FL, 34232, United States.<br>David Ray, 1973- . Address: 6302 Braun Street, Englewood, FL, 34223, United States. |
| **Date of Creation:** | 2018 |
| **Date of Publication:** | 2018-11-01 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Antonio A Lavorgna, 1968- ; Domicile: United States; Citizenship: United States. Authorship: music, musical arrangement.<br>David Ray, 1973- ; Domicile: United States; Citizenship: United States. Authorship: lyrics. |
| **Rights and Permissions:** | Antonio A Lavorgna, 105 Tucker Ave, Sarasota, FL, 34232, United States, (813) 416-4168, tony@sainttone.com |
| **Names:** | Lavorgna, Antonio A, 1968-<br>Ray, David, 1973- |

6/16/23, 6:47 PM

| Save, Print and Email (**Help Page**) | | |
| --- | --- | --- |
| Select Download Format   Full Record   ⬍   Format for Print/Save | | |
| Enter your email address:  anibal@soliditylaw.com | | Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page

15

# EXHIBIT B

## CEASE & DESIST
### *WITH*
## DEMAND LETTER

**9 August 2023**

Mike Douglass Plumbing, Inc.
c/o Ms. Lane Curtis
517 Paul Morris Drive, Suite A
Englewood, Florida 34223

**RE:** Mr. David Ray & Mr. Antonio A Lavorgna, – Copyright Infringement of "Call Mike Douglass" work with registration number PA0002154982 / 2018-11-19 – Mike Douglass Plumbing, Inc.,

Dear Ms. Lane Curtis,

Solidity Law ("**Firm**", "**us**", "**our**", or "**we**") represents Mr. David Ray and Mr. Antonio A Lavorgna (my "**Clients**"), in connection with your willful infringement of my Clients' copyright tied to the "Call Mike Douglass" work with registration number PA0002154982 / 2018-11-19, as shown in <u>Exhibit A</u> (the "**Copyrighted Material**").

Specifically, Mike Douglass Plumbing, Inc., represented by you, Ms. Lane Curtis ("**you**" or "**your**") have aired the Copyrighted Materials on Xfinity, up to 424 times, as of June 14, 2023, amounting to 424 separate copyright infringement infractions from Xfinity alone, not including the two (2) weeks it was on Spectrum channels (*estimated airings of 288 times*), as well as how it is still on your company's Facebook page. *as expanded upon below*. Please find confirmation of such amounts attached as <u>Exhibit B</u>.

Further, you are liable for willful copyright infringement, as you were notified to cease and desist the use of the Copyrighted Materials as of May 23, 2023. See correspondence confirming termination for such license, attached as <u>Exhibit C</u>.

---

**Part A: Your Willful Copyright Infringement**

Publicly displaying or performing works protected by copyright (such as the Copyrighted Materials) without the authority of the copyright owner is an infringement of the copyright owner's exclusive rights of reproduction and/or distribution.

<u>As related to your recorded infringements</u>, each time an ad containing an unlicensed song is aired, it is considered a separate instance of copyright infringement. In the case of Broadcast Music, Inc., et al. v. Evie's Tavern Ellenton, Inc., et al., Broadcast Music, Inc. (BMI) and other copyright owners filed a copyright infringement action against Evie's Tavern and its owner. The appellants were alleged to have publicly performed six copyrighted works without a license, despite numerous cease and desist letters and phone

calls. The district court granted summary judgment in the copyright owners' favor on five of the titles. On appeal, the court affirmed the district court's grant of summary judgment and award of damages, attorneys' fees, and a permanent injunction, emphasizing that the appellants' unauthorized public performances of copyrighted works constituted copyright infringement.

Pursuant to 17 U.S.C. §504(c), Anyone found to have infringed a copyrighted work may be liable for statutory damages starting from $750 up to $30,000 for each work infringed and, if willful infringement is proven by the copyright owner, that amount may be increased up to $150,000.00 for each work infringed.

In situations like this, Courts have wide discretion in awarding damages within the statutory range[1], and if an infringer can prove that they were unaware of the work's copyrighted status, a court may reduce the award of statutory damages[2][3].

An innocent infringer is one who was not aware and had no reason to believe that their acts constituted a copyright infringement[4], which serves a limitation on damages applicable only[5].

However, as more applicable to you, under US copyright law, a willful infringer is defined as a defendant who:

> Engaged in acts that infringed the copyright, and knew that those acts infringed the copyright, or acted with reckless disregard for, or willful blindness to, the copyright holder's rights[6]. Pursuant to this, courts have recognized that a finding of 'willfulness' can be made when there is evidence that the infringer was aware that their actions were infringing on a copyright[7].

To refute evidence of willful infringement, the defendant must not only establish a good faith belief in the innocence of their conduct, but also show that this belief was reasonable, as demonstrated in the case of Peer Int'l Corp. v. Pausa Records, Inc., where the defendant, who ignored revocation of its license to a copyrighted work and continued to use the work after revocation, was found to have willfully infringed that work[8].

As demonstrated in Exhibit C, **you are patently liable for willfully infringing my Client's copyright, entitling him up to $150,000.00 per infringement**.

---

[1] Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc., 772 F.3d 1254, 1261 (11th Cir. 2014) (citing 17 U.S.C. § 504(c) and Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990)).

[2] 17 U.S.C. § 504(c)(2). Bell v. Alexander, No. 21-CIV-24301, 2022 U.S. Dist. LEXIS 138300, at *12-13 (S.D. Fla. Aug. 3, 2022).

[3] See generally, Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc., 772 F.3d 1254, 1261 (11th Cir. 2014) (citing 17 U.S.C. § 504(c) and Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990))

[4] See Maverick Recording Co. v. Harper, 598 F.3d 193, 198 (5th Cir. 2010).

[5] See Malibu Media, LLC v. Fitzpatrick, 2013 U.S. Dist. LEXIS 149495, 2013 WL 5674711, at *4 (S.D. Fla. Oct. 17, 2013); see also Munro v. Fairchild Tropical Botanic Garden, Inc., 2020 U.S. Dist. LEXIS 246291, 2020 WL 7865415, at *6 (S.D. Fla. Nov. 4, 2020).

[6] See 17 U.S.C. § 504(c)(2).

[7] Id.

[8] See generally, Evergreen Safety Council v. RSA Network Inc. No. 11-35680 (9th Cir. 2012);  VHT, Inc. v. Zillow Grp - 918 F.3d 723 (9th Cir. 2019).

**Part B: My Client's Demand**

As evidenced by the Exhibits, your willful use of the Copyrighted Materials infringes our Client's copyright.

My Client further maintains that you have no license for the Copyrighted Material.

Absent proper license or permission, our client has a number of options, including the right to file suit against you for copyright infringement.

Further, officers, directors, managers, and owners of a company can be personally liable on the basis of vicarious liability for acts of copyright infringement committed by the company, when they direct, control, encourage, assist, supervise, and/or knowingly participate in the infringing activities and benefit from the activities[9].

Our client's goal is a fair and expeditious resolution of this matter with the least cost expended by the parties to achieve such a resolution. You must:

1. Immediately cease and desist all infringing activities, including any reproduction, distribution, public performance, or other uses in any form or media of the Copyrighted Materials or any part thereof;

2. Identify in detail all of the uses you have made of the Copyrighted Materials and identify all persons and/or companies to whom it has been provided copies of all or any part of the Copyrighted Materials for purposes of reproduction, alteration, public performance, or further distribution; and

3. Compensate my Clients in the amount of **$537,000.00** for the repeated infringements, payable to my client's account as instructed.

    a. Please note this amount is calculated based on the $750 statutory amount allotted for each infringement, and only based on the number of infringements we have confirmed up to now.

    b. Further note that if this demand is not met, my Client will not hesitate to pursue the maximum amount allowed for each infringement, including those we have not been able to confirm yet, but will be able to pursuant to the allotted discovery process, and given your infractions undeniably amount to willful infringement of my Client's copyright.

        i. In not acquiescing to this Letter, my Client will not hesitate to seek the full amount of statutory damages that can range anywhere from **$537,000.00 – $21,480,000, *not including for willful infringement.***

---

[9] *See* <u>Universal Furniture Int'l, Inc. v. Frankel</u>, No. 12-1928, 2013 WL 4427699 at *5 (4th Cir. 2013) (*finding the officer of closely held corporation personally liable for copyright infringement*)

This offer is designed to minimize my Clients' ultimate exposure in this matter. However, the longer this matter continues, the less inclined my Clients will be to resolve this matter without litigation. This is especially true if you attempt to avoid the responsibility of infringement or employ delaying tactics.

Please carefully consider this letter and the Exhibits. If we do not receive a response from you or your authorized representative within fifteen (15) calendar days from the date at the top of this letter, we will take further steps to resolve this matter, including filing suit in the United States District Court.

**PART C: Litigation Hold**

As the Exhibits expressed throughout this Letter concern or relate to admissible evidence in potential litigation, allow this letter to serve as notice to you that you cannot destroy, conceal, or alter any electronic data or communications procured about this matter, including, but not limited to, e-mails, texts, and WhatsApp messages**,** correspondence, and any forms of communication. Failure to comply with this notice can result in severe sanctions imposed by the applicable court for the spoliation of evidence or potential evidence.

**Preservation Obligations**

This notice requires that you affirmatively preserve and not destroy, delete, hide, or misplace documents and materials of all kinds, including without limitation all electronic mail (email), letters, draft letters, facsimile transmissions, memoranda, draft memoranda, instant messages (IMs), text messages, charts, phone messages, phone logs, calendars, reports, handwritten notes, typewritten notes, chats and spreadsheets, articles, draft articles, photographs, still images, illustrations, video recordings, audio recordings, transcripts of video or audio recordings, among other types of documents and communications. This demand also requires that you affirmatively preserve all servers, backup tapes, hard drives, and storage devices in your possession, custody, or control and could contain any of the aforementioned documents and/or materials.

*Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 2 l8 (S.D.N.Y. 2003) (''Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.''): *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422,432 (S.D.N.Y. 2004) (''Once a 'litigation hold' is in place a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.'''); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614,620 (D. Colo. 2007) (''To ensure that the expansive discovery permitted by Rule 26(b)(I) does not become a futile exercise, putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation.''); *In re Napster, Inc. Copyright Litigation,* 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (holding that "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"); *A. Farher & Partners, Inc. v. Garber,* 234 F.R.D. 186. 193 (C.D. Cal. 2006) (same); *Apple Inc. v. Samsung Elecs. Co.,* 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012) (holding that a party has an "obligation to preserve evidence from the moment that litigation is reasonably anticipated.'')

Severe sanctions may be imposed for failure to preserve evidence after being notified of a dispute. *Victor Stanley, Inc. v. Creative, Inc.,* 269 F.R.D. 497,520 (D. Md. 2010) (holding "sanctions may stem from a failure

to comply with a preservation order."); *Pitney Bowes Gov't Solutions, Inc. v. United States,* 93 Fed. Cl. 327, 336 (2010) ("Spoliation may result in sanctions grounded in contravention of specific discovery or document-preservation orders.''); *Pension Committee of the Univ. (f Montreal Pension Plan v Banc of Am. Sec. LLC,* 685 F. Supp. 2d 456,466 (S.D.N.Y. 2010) (holding that a "'breach of the duty to preserve, and the resulting spoliation of evidence, may result in the imposition of sanctions by a court because the court must ensure that the judicial process is not abused.''); *Zubulake,* 229 F.R.D. at 430 ("The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."'); *Beers v. General Motors,* 1999 WL 32538 (N.D.N.Y) (ordering the dismissal of the case for spoliation when party's expert lost critical evidence); *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007) ("A spoliation sanction is proper where (I) a party must preserve evidence because it knew or should have known, that litigation 'was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."): *see also Lutalo v. Nat'! R.R. Passenger Corp.* No. I I-CV-00974-REB-KLM, 2013 WL 1294125, at*6 (D. Colo. Mar. 28, 2013) (ordering evidentiary sanctions and attorneys' fees and costs on spoliation motion); *Cabinetware, Inc. v. Sullivan,* 1991 WL 327959 (E.D. Cal. 1991); *William T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443 (C.D. Cal. 1984).

You should anticipate that much of the information requested to be preserved herein is stored on your current and former computer or mobile systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories, tablets, cell phones, and smartphones).

Electronically stored information ("**ESI**") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messages, text messages, chats);
- Word-processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, TlFF, .JPG, .GIF images);
- Sound Recordings (e.g., WAY and MP files);
- Video and Animation (e.g., AV! and . MOY files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer-Aided Design/Drawing Files; and Back Up and Archival Files (e.g., Zip);
- ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you but also in areas you may deem *not* reasonably accessible.  You are obliged to *preserve* potentially relevant evidence from *both* these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Under amendments to the Federal Rules of Civil Procedure approved by the United States Supreme Court (effective December I, 2006), you must identify all sources of ESI you decline to produce and demonstrate

to the trier of fact why such sources are not reasonably accessible. *See* Fed. R. Civ. P. 26(b)(2)(B). For good cause shown, the trier of fact may order ESI production, even if it finds that it is not reasonably accessible. *Id.* Accordingly, even ESI that you deem reasonably inaccessible *must be preserved in the interim not to deprive my client of their right* to secure the evidence or the right of any trier of fact to adjudicate the issue.

**Preservation Requires Immediate Intervention**

You must act immediately to preserve potentially relevant ESI, including, without limitation, information with the earlier of a Created or Last Modified on or after November 3, 2022, through the present.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols to protect ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents, or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent the loss or corruption of ESI.

Nothing in this demand for the preservation of ESI should be understood to diminish your concurrent obligation to preserve documents, tangible things, and all other potentially relevant evidence.

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity, or other criteria;
- Using data or media wiping, disposal, erasure, or encryption utilities or devices
- Overwriting, erasing, destroying, or discarding backup media; Re-assigning, e-imaging, or disposing of systems, servers, devices, or media;
- Running antivirus or other programs affecting wholesale metadata alteration; Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that your employees, officers, or others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where your machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy the information they regard as private, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers.  It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI

and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to your data, systems, and archives from seeking to modify, destroy or hide electronic evidence on the network or local hard drives (such as by deleting or overwriting files, using data shredding, and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by creating and authenticating a forensically qualified image of all drive sectors. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional backup of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

Concerning the hard drives and storage devices of each of the persons with sufficient knowledge or information about this dispute, as well as each other person likely to have information about the dispute on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from **September 15, 2022 through the present,** as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image, and the system and medium from which it was obtained. Each such image should be preserved without alteration.

**Preservation in Native Form**

You should anticipate that specific ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in connection with resolving this dispute.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation, and last modification or access. Application metadata is information automatically included or embedded in electronic files that may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing.   Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data, Base 64 encoded attachment data, and the To, From, Subject, Received Date, CC,

and BCC fields.

**Servers**

Concerning servers like those used to manage electronic mail (e.g., Microsoft Exchange) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways. To protect the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation methods you use are ones that we will accept as sufficient, call to discuss it.

**Home Systems, Laptops, Online Accounts, and Other ESI Venues**

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members, or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices, and media used for these purposes (including not only potentially relevant data from portable and home computers but also from portable thumb drives, CD-R disks and the user's PDA, smartphone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers, or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail, or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted. and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams. flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve-any passwords, keys, or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals- and license keys for applications needed to access the ESI.

You must preserve any cabling, drivers, and hardware other than a standard CD or DVD optical disk drive if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives, 3.5" floppy disk drives, and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

Because hard copies do not preserve electronic searchability or metadata, so they must be an adequate substitute for, or cumulative, electronically stored versions. If information exists in electronic and paper forms, you should preserve both.

**Agents, Attorneys, and Third Parties**

Your preservation obligation extends beyond ESI in your care, possession, or custody and includes ESI in the custody of others subject to your direction or control. Accordingly,  you must notify any current or

former agents, attorneys, employees, custodians, contractors, and any other third parties possessing potentially relevant ESI to preserve such ESI to the fullest extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

**System Sequestration or Forensically Sound Imaging**

We suggest that, concerning any person with sufficient knowledge or information of this dispute, removing their ESI systems, media, and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

If you deem it impractical to sequester systems, media, and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and  cost-effective. As we anticipate the need for forensic examination of one or more systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods.  Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as an accurate and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Do Not Delay Preservation**

We are available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted due to delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss, or delay in producing evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek all appropriate sanctions.

**Confirmation of Compliance**

Confirm in writing by no later than **June 23, 2023** that  you will comply with the preceding instructions and have taken the steps outlined in this document to preserve ESI and tangible documents potentially relevant to this dispute. If you have not undertaken the steps outlined above or have taken other actions, describe what you have done to preserve potentially relevant evidence. Do not hesitate to contact me if you have any questions regarding the instruction and requirements.

This letter is not intended as a full or complete statement of all relevant facts or applicable law, and nothing herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of my Client's rights, remedies, claims or causes of action, all of which are hereby expressly reserved.

To reiterate, my Clients demand that you **IMMEDIATELY CEASE & DESIST AND COMPLY WITH THE SPECIFIC DEMANDS REQUESTED** and **PROVIDE WRITTEN ASSURANCES** within five (5) business days of your receipt of this letter.

Contact me at +1 (305) 878-4894 or anibal@soliditylaw.com if there are any questions regarding this demand so I can provide instructions on how my Client would like to receive the settlement amount. We hope to resolve this dispute as swiftly as possible.

**Govern yourself accordingly.**

Cordially,

Anibal Suriel, Esq.
Founder, Managing Partner
Solidity Law



**EXHIBIT C**

**Sanchez Law**

Albert A. Sanchez, Jr.
*Attorney at Law*

May 23, 2023

Ms. Lane Curtis, CEO
Mike Douglass Plumbing, Inc.
517 Paul Morris Drive, Suite A
Englewood, Florida 34223
*Via UPS Ground, Signature Required; Regular U.S. Mail and Email: lane43.lc@gmail.com*

Re:     Termination of Executive Employment Agreement dated October 14, 2020, and license
        qualification of Mike Douglass Plumbing, Inc. ("Company").

Dear Ms. Curtis:

        This law firm represents Mr. David Ray. As you are aware, in April 2023, Mr. Ray
expressed significant concerns to you regarding management and financial actions taken by you
related to the Company. After no response was received from you, Mr. Ray followed up with an
email to you and the Company's legal counsel, dated May 5, 2023.

        Despite Mr. Ray's multiple efforts to address with you and resolve the management and
financial matters with which he was concerned, you have failed to respond in any fashion. As such,
Mr. Ray has made the difficult decision to notify the Company of his election to terminate his
employment with the Company.

        This communication serves as Formal Notice that Mr. Ray, effective immediately, has
terminated his employment with the Company. Further, and in accordance with §489.119, Florida
Statutes, Mr. Ray will inform the Florida Department of Business and Professional Regulation that
he has ceased to be affiliated with the Company.

        "Further, and as you know, Mr. Ray is the owner of the copyright on the lyrics in the Mike
Douglass television advertisement "Call Mike Douglass". You and the Company are hereby

*Business & Construction Litigation*
*Dispute Resolution    Mediation    Litigation    Arbitration*

Sanchez Law, PLLC | 2055 Wood Street, Suite 220, Sarasota, Florida 34237 | Phone 941-366-0001 | Fax 941-366-0025 | albert@sanchezlawfla.com
www.sanchezlawfla.com

26

Page Two
May 23, 2023

notified that Mr. Ray will no longer allow the Company to use his copyrighted material. Should the Company continue to use Mr. Ray's copyrighted material after the date of this notice, Mr. Ray will pursue all legal rights available to him against the Company."

Yours truly,

Albert A. Sanchez, Jr.

AAS/cb